**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

                **CRIMINAL NO. 09-20295**

**vs.**                **HON. MARIANNE BATTANI**

**D-2    SAMUEL L. RIDDLE, JR.**
          **and**
**D-3    MARY WATERS,**

          **Defendants.**

_____/

**UNITED STATES' MOTION *IN LIMINE***
**TO PRECLUDE EVIDENCE OR ARGUMENT**
**CONCERNING IMPROPER PROSECUTION**

The United States of America, by and through its attorneys, Robert Cares and David A. Gardey, Assistant United States Attorneys, for the Eastern District of Michigan, moves *in limine* to preclude evidence or argument related to any claims by defendants Samuel L. Riddle, Jr. and Mary Waters of selective, vindictive, or other improper prosecution. More particularly, the government asks that the defendants be precluded from asking questions during voir dire, or asking questions or submitting evidence or arguing at trial, relating to the following:

1. The general claim that they are being selectively and/or vindictively prosecuted, or that their prosecution violates the First Amendment or their other rights as United States citizens;

2. Any claim that they are being prosecuted for who they are, or because they are "fall guys," and any other claim that they have been chosen for prosecution for any reason other

than the fact that the government had allegations, which were substantiated, that they violated the law as described in the indictment;

3. The claim that the government has failed to investigate or prosecute the "enablers of corruption" or other people or companies that gave bribes in the transactions at issue in this case;

4. The claim that the Department of Justice, the United States Attorney's Office, or the law enforcement personnel in this case have brought this case because of politics or any other improper considerations;

5. The claim that the defendants' conduct is simply consistent with "politics as usual";

6. The claim that the government engaged in some sort of outrageous misconduct during the investigation of this case; and

7. The claim that the jury should acquit the defendants because jurors should not condone the government's use of cooperating individuals.

The government further asks that the defendants be required to obtain leave of the Court prior to referring to any of the areas outlined above.

The government's efforts to seek concurrence in this motion from defense counsel were unsuccessful.

For the reasons supported by the attached brief, the United States asks that its motion *in limine* be granted.

Respectfully submitted,

BARBARA L. MCQUADE
United States Attorney


s/Robert Cares
ROBERT CARES
Assistant U.S. Attorney


s/David A. Gardey
DAVID A. GARDEY
U.S. Department of Justice
211 West Fort Street, Suite 2001
Detroit, Michigan  48226-3211
Telephone: (313) 226-9591

DATED: May 12, 2010

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

                                             **CRIMINAL NO. 09-20295**

**vs.**                                        **HON. MARIANNE BATTANI**

**D-2   SAMUEL L. RIDDLE, JR.**
        **and**
**D-3   MARY WATERS,**

       **Defendants.**
_____/

## BRIEF IN SUPPORT OF UNITED STATES' MOTION
## *IN LIMINE* TO PRECLUDE EVIDENCE OR ARGUMENT
## CONCERNING IMPROPER PROSECUTION

BARBARA L. MCQUADE
United States Attorney

ROBERT CARES
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9736
E-Mail: robert.cares@usdoj.gov

DAVID A. GARDEY (P48990)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9591
E-Mail: David.Gardey@usdoj.gov

## **TABLE OF CONTENTS**

CONTROLLING AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

STATEMENT OF ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.      Improper Prosecution Is A Matter of Law For the Court. . . . . . . . . . . . . 1

        B.      Politics As Usual Is An Improper Argument. . . . . . . . . . . . . . . . . . . 3

        C.      Government Misconduct Is An Improper Argument. . . . . . . . . . . . . 5

        D.      Admission of Argument or Evidence of Improper Prosecution
                or Unfair Trial Would Violate Rules of Evidence. . . . . . . . . . . . . . . . 7

III.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## TABLE OF CONTROLLING AUTHORITIES

United States v. Abboud, 438 F.3d 554 (6th Cir. 2006)

United States v. Berrigan, 482 F.2d 171 (3d Cir. 1973)

United States v. Fieger, 2008 WL 996401 (E.D. Mich. April 8, 2008)

United States v. Riddle, Case No. 09-20025 (E.D. Mich. January 6, 2010)

## STATEMENT OF ISSUE

The issue presented by this motion is as follows:

1.    Whether the defendants should be allowed to introduce evidence or argument regarding claims of improperly motivated or conducted investigation and prosecution, where the Sixth Circuit has held that such evidence and argument should not be placed before the jury and where such evidence and argument are irrelevant to the charges in the indictment.

## I.   INTRODUCTION

The law is clear that a claim of selective, vindictive, or other improper prosecution is not a defense on the merits of the case and may not be addressed to the jury.  Rather, such a claim is a legal argument that may be directed only to the Court.  Permitting the defendants to raise these issues at trial would serve, at best, to unduly prolong the proceedings and confuse the jury.  At worst, allowing the defendants to explore this area would inflame the passions of the jury, unfairly prejudice the government, and invite a miscarriage of justice.  Evidence and argument on the matters raised in the defendants' various media and public relations efforts and on any other claim that the prosecution is improper, have no place before the jury.

## II.   ARGUMENT

The defendants' possible improper prosecution claims essentially break down into the categories outlined above in the Motion *in Limine*.  The law is clear, however, that such arguments or evidence regarding these points must be excluded from trial.

### A.   <u>Improper Prosecution Is a Question of Law for the Court</u>

The issue of whether the government engaged in selective or vindictive prosecution of the defendants is a legal question for the Court, not a factual issue for the jury.  <u>United States v. Abboud</u>, 438 F.3d 554, 579-580 (6th Cir. 2006).  As the Sixth Circuit explained in <u>Abboud</u>:

> [B]ecause the defense of selective prosecution is a matter that is independent of a defendant's guilt or innocence ... it is not a matter for the jury. "By both tradition and constitutional mandate the jury is given the responsibility of determining guilt or innocence according to instructions of law delivered by the court. The question of discriminatory prosecution relates not to the guilt or innocence of appellants, but rather addresses itself to <u>a constitutional defect in the institution of the prosecution</u>."

1

Id. at 579 (quoting United States v. Berrigan, 482 F.2d 171, 175 (3d Cir. 1973) (emphasis added)).   While Abboud only explicitly addresses claims of selective prosecution, its reasoning applies equally to any claim that the prosecution itself is improper.   That is why evidence and argument that the prosecution is improper may only be raised in a pre-trial motion to dismiss the indictment.   See Fed.R.Cr.P. 12(b)(3)(a) (requiring a motion alleging a defect in instituting the prosecution to be raised before trial); see also Berrigan, 482 F.2d at 175 (same).

In United States v. Fieger, 2008 WL 996401 (E.D. Mich. April 8, 2008), Judge Borman addressed similar claims of improper and politically-motivated prosecution made by the defense.   Judge Borman granted almost every area of the government's motion *in limine* and ordered the defense not to raise its claims of a political or improper prosecution during the trial.   Id. at *1-3.

In the same way, in United States v. Riddle, Case No. 09-20025 (E.D. Mich.), the United States filed a similar motion concerning claims of improper prosecution by defendant Riddle.   See Docket No. 102 in Case No. 09-20025.   Judge Cohn granted this request and precluded defendant Riddle from introducing evidence or arguing to the jury that he was faced with an improper or selective prosecution.   United States v. Riddle, Case No. 09-20025, Order Regarding Pretrial Motions (E.D. Mich. January 6, 2010) (Docket No. 104).

The defendants should also be precluded from suggesting that they were selectively or otherwise improperly investigated or prosecuted during opening statement, closing argument, and while presenting their case in chief.   They should also be restricted, in the same fashion, while cross examining government witnesses, for the same reasons that similar arguments were forbidden on cross examination in Berrigan.

2

In Berrigan, a priest and a nun were charged with smuggling letters from a prison, among other crimes.  At trial, they attempted to introduce evidence that they were being prosecuted, in part, because of "their outspoken views and position of leadership in deeply opposing the war in Viet Nam."  Berrigan, 482 F.2d at 177.  They also argued that the smuggling of letters out of prison was commonplace and that very few prosecutions resulted therefrom.  Id. at 179.  The Third Circuit affirmed the trial court's decision to limit the cross-examination of two government witnesses through questions which would have gone to these points.  Id. at 180.  Such questions are "separate and distinct" from the witness's bias or the credibility of his testimony.  Abboud, 438 F.3d at 580.

## B.   "Politics As Usual" Is An Improper Argument

One subset of the arguments that the United States seeks to exclude is any claim that the payment of bribes to public officials is just politics as usual that should not be punished criminally.  In this regard, the defendants may well suggest that the law is unfair or burdensome because their conduct is simply consistent with the way the political system is set up.  Likewise, the defendants may argue that their conduct is simply what all lobbyists do and, to the extent their conduct violates the law, then the law is unrealistic or unfair.  Such argument, which concedes the conduct but simply suggests to the jury that even if such conduct is technically illegal it is proper, necessary, or simply the way of life in politics, seeks jury nullification and should be barred.  See, e.g., United States v. Warledo, 557 F.2d 721, 730 (10th Cir. 1977) (affirming exclusion of evidence offered to explain the defendants' motives as irrelevant to whether their activity was "wrongful" under the Hobbs Act); United

States v. Boardman, 419 F.2d 110, 114 (1st Cir. 1969) (affirming exclusion of evidence regarding the defendant's political beliefs because it was irrelevant to whether he acted knowingly and deliberately).

In addition, any defense premised on a theory that a defendant's actions were "politics as usual" would necessarily implicate evidence or argument (or both) related to politics, politicians, lobbyists, or activities not relevant to the instant charges. In an analogous situation, the Second Circuit in United States v. Stirling, 571 F.2d 708, 735 (2d Cir. 1978) strongly denounced efforts to defend a securities fraud case on the basis of defense questioning which implied that the charged criminal activities amounted to proper and routine business practice:

> [The defendants] argue that they were prejudiced by the district court's decision to bar questions put by them to their witnesses regarding the "normalcy" or "usualness" of certain Greater Gulf practices. The district court instructed counsel not to ask witnesses about "the legal consequences of things," such as whether activities were "wrong," "misleading," "proper," or "ethical." For example, in response to a question from counsel for the appellants, a state court judge from Mississippi testified that because prominent people with good reputations were involved in Greater Gulf, he assumed that it was "normal" for a non-profit corporation to be used to implement the project. Such testimony is not even arguably admissible. It would have been an abdication of responsibility if the trial judge had not interrupted, as he did, to instruct counsel not to ask such questions.

571 F. 2d at 735-36.

Evidence regarding the acts or conduct of other politicians, lobbyists, consultants, or individuals is irrelevant to the issues in this case and, if allowed, would distract and confuse the jury. No one is on trial in this case other than the defendants, and the jury should not be presented with evidence as to whether other individuals committed similar acts. Accordingly, the defendants should be precluded from making argument or presenting evidence

4

regarding similar "political" or "lobbying" acts engaged in by others or suggesting that the defendants' conduct was simply part of politics or "politics as usual."

## C.  Government Misconduct Is An Improper Argument

Another subset of the arguments that the United States seeks to exclude are claims of outrageous government conduct.  There is an "increasing tendency in criminal cases to try some person other than the defendant and some issues other than his guilt." United States v. Griffin, 867 F. Supp. 1347, 1347 (N.D. Ill. 1994) (citation omitted), aff'd, 84 F.3d 820 (7th Cir. 1996).  The "thrust of the defense" in these types of cases "is this: the prosecution was not nice or could have done it better and so the jury ought to acquit, whether or not guilt has been proved beyond reasonable doubt." Griffin, 867 F. Supp. at 1347.  In the face of this increasing tendency to interject themes of "government misconduct" into a defense strategy, courts routinely have granted motions *in limine* "to bar defendants from presenting evidence or making arguments to the jury suggesting that they should be acquitted because the government engaged in misconduct in the course of its investigation." United States v. Shields, 1991 WL 236492, at *3 (N.D. Ill. 1991); see United States v. Simpson, 226 Fed. Appx. 556, 562 (6th Cir. 2007) (upholding district court decision barring defense from presenting vindictive prosecution claim to jury).

The impropriety of arguing allegations of governmental misconduct to the jury is twofold. First, and most fundamentally, courts have rejected the outrageous government conduct defense and have held that such claims afford no defense to a criminal prosecution as a matter of law.  See, e.g., United States v. Boyd, 55 F.3d 239, 241-42 (7th Cir. 1995). Boyd is unequivocal in its holding that "outrageous government conduct" is no defense to a criminal charge, and the jury thus should not be exposed to irrelevant allegations of this

sort.  Second, even before the <u>Abboud</u> decision, the Sixth Circuit and other courts have held that the issue of government misconduct is a matter of law for determination by the court: "the issue of outrageous government conduct is not an issue for the jury." <u>United States v. Swiatek</u>, 819 F.2d 721, 726 (7th Cir. 1987) (noting that every circuit which has considered the issue has held that the issue is not a jury question) (citations omitted); <u>United States v. Payne</u>, 962 F.2d 1228, 1232 (6th Cir. 1992) (defense of outrageous government conduct is to be decided by the court and not a jury).

There are numerous ways in which the defendants may attempt, either directly or subtly, to improperly argue alleged government misconduct as a defense.  Certain of these arguments may occur in statements to the jury, while others may occur through improper cross-examination of either government or defense witnesses.  By way of illustration, the defendants could attempt to improperly argue alleged government misconduct as a defense by suggesting the government's investigation was abusive and, itself, violated the law or ethical requirements.  None of these allegations are appropriate for consideration by the jury and merely attempt to shift the focus from the defendants' criminal conduct to the government's conduct, which is not an issue for the jury.  Indeed, none of the arguments are legally relevant and simply invite the jury to acquit the defendants without regard to admissible evidence.  To the extent the defendants wish to raise these issues, they are only appropriate for consideration by the Court, not the jury.

As one subset of the potential improper arguments of "outrageous government conduct" noted above, it is improper to argue that the jury should acquit the defendants because jurors should not condone the government's use of cooperating individuals, the decision to enter into plea agreements with certain individuals, or the decision to immunize

individuals in order to obtain testimony.  Of course, the defendants may properly cross-examine any witness as to the benefits they received as a cooperating individual, the nature of their plea agreement with the government, or any grant of immunity, so as to raise issues regarding the credibility of the particular witness as a consequence thereof.  However, while the defendants may permissibly argue that none of the cooperating witnesses testifying in the case should be believed because of benefits they have received, the defendants should not be permitted to argue that the jury should acquit them because it is, or should be, improper for the government to engage in the practice of using cooperating individuals, or offering plea agreements or immunity to witnesses in exchange for testimony.  Such an attack upon the prosecutorial decisions in this case constitutes a "government misconduct" argument, as discussed above, and seeks only to incite jury nullification.

     **D.**    **Admission of Argument or Evidence of Improper Prosecution<br>or Unfair Trial Would Violate Rules of Evidence**

Federal Rule of Evidence 402 precludes evidence or argument about the defendants' theories of improper prosecution on the grounds of relevance.  It is black-letter law that a defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Taylor v. Illinois, 484 U.S. 400, 410 (1988).  As explained above, evidence or argument suggesting that the defendants were improperly investigated or prosecuted, or that other companies or individuals should have been prosecuted, are irrelevant to their guilt or innocence.  Accordingly, it is inadmissible under Rule 402.

If Abboud were not the controlling law of this Circuit, and if this evidence were somehow marginally relevant, these arguments and this evidence would still be excluded

from trial by Federal Rule of Evidence 403.  Rule 403 directs the Court to exclude even relevant evidence, when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

Indeed, even before <u>Abboud</u> was decided, the Sixth Circuit affirmed a trial judge's Rule 403 ruling which precluded questioning of a government agent regarding the government's motives in prosecuting a defendant.  In <u>United States v. Burge</u>, the defendant attempted to call a government agent to show that "the current prosecution was but one part of a pattern of government harassment of Defendant aimed at coercing his cooperation in other government investigations."  990 F.2d 244, 248 (6th Cir. 1992) (internal quotations omitted).  In upholding the trial court's evidentiary ruling, the Sixth Circuit noted that "[t]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination based on concerns about, among other things, . . . confusion of the issues . . . or interrogation that is . . . only marginally relevant."  <u>Id.</u> at 249.  The Sixth Circuit explained that the inquiry was relevant because it may have "cast doubt on the credibility of evidence or testimony presented by the government."  <u>Id.</u> at 248.  Nevertheless, "the defendant's right to examine a government witness to elicit evidence of bias is not absolute."  <u>Id.</u> at 248-249.  The Sixth Circuit concluded that the trial court retained discretion to bar the inquiry, noting that the "testimony excluded certainly had a potential to confuse the jury as to the issues in the case."  <u>Id.</u> at 249.

In this case, the prior statements of Riddle underscore that the only effect of an improper prosecution argument would be to inflame the passions of the jury, unfairly prejudice the government, and confuse the issues at trial.  Since the investigation of Riddle and Waters became public in June 2009, defendant Riddle in particular has continuously and

publicly used sensational rhetoric to denounce the investigation.  For example, on December 19, 2009, Riddle stated, "What is occurring here is you have one of the most political divisions of the United States Department of Justice operating right here in Detroit.  These punks think they are going to intimidate us and beat us down and I call 'em punks because we're not seeing the administration of justice.  What we're seeing is they're trying to cover their tracks after they lost the Geoffrey Fieger case.  The terrorists beat 'em down.  Now a motorcycle gang is beating 'em down.  Well, I'm not going down."  Riddle Interview on Real Talk, WADL-38 Television Broadcast, December 19, 2009.

In a June 2009 television interview, Riddle attacked the political nature of the investigation against him and Mary Waters.  Riddle claimed that the prosecution of him and Waters was political in nature, with Congresswoman Carolyn Kilpatrick directing the prosecution based on his claim that the Justice Department was seeking to eliminate Waters as a political opponent.  Let It Rip, Interview of Samuel Riddle by Huel Perkins, WJBK-Fox 2, June 18, 2009.

When the Indictment was unsealed, Riddle stated, "'I am not going to be the fall guy.'" The Detroit News, "Riddle Vows 'Tooth and Nail' Court Fight," July 16, 2009 at 17A.  According to the article, "Riddle unleashed a diatribe against federal authorities and Synagro Technologies Inc." Id.  "'The culture of corruption will go nowhere until they go after the enablers of corruption . . .,' Riddle said." Id.  On July 1, 2009, Mr. Riddle appeared for an interview with Paul W. Smith on the radio on WJR-AM.  During that interview, Riddle criticized the government and the FBI for failing to "go after the enablers of corruption," and instead for pursuing "salacious" allegations.  In a different radio interview conducted on June 17, 2009, Riddle also criticized the government's prosecution saying that "you also have to

9

understand the motivations of the Department of Justice.  You know this is a department of justice that is one of the most political in the nation."  <u>The Mitch Albom Show</u>, WJR-AM, June 17, 2009.

During the course of the case against defendant Riddle pending before Judge Cohn, both before and during trial, Riddle did not hesitate to attack Judge Cohn directly and imply that he was not receiving a fair trial.  Riddle may seek to pursue similar tactics by eliciting sympathy from the jury by claiming that this Court is not giving him a fair trial.  For example, in the case before Judge Cohn, Riddle attacked Judge Cohn and the fairness of the upcoming trial in that case, calling Judge Cohn a "tyrant" and a "bully."  In a December 3, 2009 story in <u>The Detroit News</u>, the newspaper reported that Riddle stated: "'It's not fair,' Riddle said Wednesday.  'He's giving me less time to prepare for the case than he is giving to sentence (former Detroit City Councilwoman) Monica Conyers,' a co-defendant in the case.  Conyers pleaded guilty this summer and awaits sentencing."  Riddle added: "'I may well be being denied the right to effective counsel in terms of case preparation.'"

Were Riddle to make similar accusations against this Court, such statements would have nothing to do with whether or not the defendants engaged in a conspiracy to commit bribery, aided and abetted bribery, or committed the other crimes charged in the Indictment, which are the only issues for the jury to decide.  At the same time, there is no doubt that allowing such argument or evidence to be introduced at trial would unfairly prejudice the government.

## III.   CONCLUSION

For these reasons, the government respectfully requests that the Court grant its motion *in limine* and preclude the defendants from introducing questions, evidence or argument, as detailed in our motion, to the jury at any stage of this proceeding.

<div style="margin-left:40%">

Respectfully submitted,

BARBARA L. MCQUADE
United States Attorney


s/Robert Cares
ROBERT CARES
Assistant U.S. Attorney


s/David A. Gardey
DAVID A. GARDEY
U.S. Department of Justice
211 West Fort Street, Suite 2001
Detroit, Michigan  48226-3211
Telephone: (313) 226-9591

</div>

DATED: May 12, 2010

<div style="text-align:center">11</div>

## CERTIFICATE OF SERVICE

I hereby certify that on  May 12, 2010, I electronically filed the foregoing

document with the Clerk of the Court using the ECF system which will send notification

of such filing to the following:


John McManus, Esq.

Richard Convertino, Esq.


                                        s/David A. Gardey
                                        DAVID A. GARDEY
                                        Assistant United States Attorney
                                        211 W. Fort Street, Suite 2001
                                        Detroit, MI  48226
                                        Phone:  (313) 226-9591
                                        E-Mail:  David.Gardey@usdoj.gov
                                        Bar No. P48990

DATED: May 12, 2010